UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

LUIS OTERO and ZACHARY JOHNSON,

Plaintiffs,

v.                                                            CAUSE NO. 2:19-CV-396 DRL

INDIANA HARBOR BELT RAILROAD CO.,

Defendant.

## OPINION AND ORDER

Luis Otero and Zachary Johnson are employees of Indiana Harbor Belt Railroad Company (IHB). Mr. Otero has diabetes, and Mr. Johnson has hypertension. After receiving certain information about Mr. Otero's health through one of his applications for medical leave and following up with multiple examinations, IHB medically disqualified Mr. Otero without pay until his treating doctor assured IHB he could safely perform his job as a locomotive engineer. For similar reasons, IHB medically disqualified Mr. Johnson without pay and told him that he could return as a switchman/trainman/conductor if a doctor clarified the nature of his health condition. Both men sued for interference and retaliation under the Family and Medical Leave Act (FMLA) and discrimination under the Americans with Disabilities Act (ADA). Today IHB requests summary judgment. The court grants the dual motions only in respects.

## BACKGROUND

A.    *Luis Otero.*

Mr. Otero was diagnosed with type 2 diabetes mellitus in January 2014. The condition never hurt his work performance at IHB. On July 30, 2018, he submitted a request to recertify his FMLA leave for diabetes. He supported his request with a certification from his treating doctor, Dr. Nihad Muhrez. IHB informed Mr. Otero by letter that he had used all his allotted FMLA leave for the requested period. Still, IHB asked Dr. Shirley Conibear, an outside consultant, to review the request.

The treating physician's report raised concerns. In his certification, Dr. Muhrez indicated under "other relevant medical facts" that Mr. Otero "may experience hypo or hyperglycemic episodes (episodes of incapacity/flare ups)." He did not say how severe Mr. Otero's condition was—just that he could experience these issues and there could be hospital stays. Dr. Conibear agreed that the FMLA request was "reasonable," but she noted her safety concerns given that Mr. Otero operated a locomotive and was expected to be always alert. Although Dr. Conibear recommended approving FMLA leave, she also recommended that Mr. Otero submit to a fitness-for-duty examination before returning to work.

On August 9, 2018, IHB informed Mr. Otero that Dr. Conibear recommended he submit to a fitness-for-duty examination and that he would be eligible for FMLA leave on September 6, 2018. The letter recalled that IHB and Mr. Otero discussed over the phone that he would submit to this examination as soon as possible. Mr. Otero went to this examination on August 10, 2018. The examination confirmed his fitness for duty and his "good understanding" of his diabetes. Dr. Conibear reviewed the results, but she saw nothing specifically referring to or analyzing his potential episodes of incapacity and how that might affect his ability to work safely.

On September 6, 2018, IHB approved FMLA leave and obtained Mr. Otero's consent for Dr. Conibear to speak with Dr. Muhrez about the information in the July 2018 FMLA request. She was unable to reach Dr. Muhrez, who was out of town.

Mr. Otero used FMLA leave again on September 19-20, 2018. On October 5, 2018, Dr. Conibear told Melanie Lindner, IHB's Manager of Human Resources and Labor Relations, that she still had concerns about Mr. Otero's ability to operate a locomotive safely. Due to Dr. Conibear's concerns, Nicole Parchem, IHB's Director of Human Resources and Labor Relations, medically disqualified Mr. Otero with pay that same day. She cited Dr. Conibear's recommendation and the fitness-for-duty examination results. On October 8, 2018, IHB told Mr. Otero that the company still had medical concerns. The

railroad requested a second fitness-for-duty examination and six months of medical records that would be reviewed by its medical consultants.

Dr. Daniel Bakston examined Mr. Otero on October 16, 2018. On October 22, 2018, after Dr. Bakston had the information he needed, he approved Mr. Otero for work with accommodations. The accommodations included an extra conductor on board the locomotive whenever Mr. Otero operated one outside the railyard. Mr. Otero also would need to check his glucose every 2-4 hours while on duty. Dr. Bakston additionally recommended that Mr. Otero submit quarterly reports from his treating specialist and undergo a yearly fitness-for-duty examination.

Dr. Bakston thought Mr. Otero could safely operate a locomotive within the railyard alone because it would be easier to stop it there. The company's human resource director inquired whether that was true by speaking with IHB's engineers, who told her it was harder to stop a train inside the railyard. She also discovered that hiring an extra conductor to sit with Mr. Otero on board would violate the collective bargaining agreements between IHB and the unions for conductors and locomotive engineers. She thus decided that the accommodations weren't options, rendering him unable to return to work.

On October 24, 2018, IHB informed Mr. Otero that he was medically disqualified from returning to work as a locomotive engineer. He still received pay for his administrative leave and benefits from October 5 through October 24 (though he did not receive the equivalent of overtime pay).

Mr. Otero requested a third opinion on October 25, 2018. He asked his union representative to contact IHB about the disqualification. On November 7, 2018, IHB explained by letter that Mr. Otero's condition caused IHB safety concerns, for him and those working around him, and that the suggested accommodations could not be made. IHB spoke with Dr. Bakston on November 19, 2018. He stood by his recommended accommodations though IHB informed him that driving a locomotive in the railyard was just as dangerous as outside the yard.

On December 4, 2018, Mr. Otero gave IHB an "Endocrinologist Evaluation Checklist." Dr. Muhrez completed this checklist more than a month earlier (October 18, 2018), reporting that Mr. Otero's insulin dosage had recently lowered, he had not had recurring hypoglycemic episodes, he had not been hospitalized, he managed his diabetes well, he did not have symptoms suggesting he would fall unconscious or an impact to his driving, and he could safely operate a train while using insulin. According to Mr. Otero's reinstatement letter, Dr. Conibear again tried to reach Dr. Muhrez, who then responded January 7, 2019; he clarified the issues that had concerned IHB all along throughout this process, thereby clearing Mr. Otero to return to work.[1] On January 9, 2019, IHB reinstated Mr. Otero.

B.    *Zachary Johnson.*

Mr. Johnson works at IHB as a switchman/trainman/conductor. His position requires him to handle locomotives, including pulling, shoving, coupling, and uncoupling them. He was diagnosed with hypertension in June 2017. On June 6, 2017, he spoke with Manager Lindner. After she explained his rights, he applied for and received FMLA leave from May 19, 2017 to June 7, 2017. After speaking with Manager Lindner about how he also could obtain intermittent leave, he applied for and received one day off every three months for his hypertension from July 30, 2017 to July 29, 2018.

---

[1] Mr. Otero objects to the use of this letter for this information as inadmissible hearsay [ECF 84 at 16]. Hearsay is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). IHB has not sought to admit this evidence for its truth. Rather, this evidence addresses what motivated IHB, regardless of whether it was true. In addition, it matters only whether this evidence could be rendered admissible. At summary judgment, the court may only consider admissible facts. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018). Affidavits must set out facts that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(4), but other documents may offer facts at summary judgment so long as the party can establish that these facts could be presented in a form that would be admissible, *see* Fed. R. Civ. P. 56(c)(1), (c)(2). The proper question for documents used at summary judgment is whether the facts within them could be rendered admissible, not whether a foundation has been laid already. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010) ("the form produced at summary judgment need not be admissible"); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (federal rules "allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form"). Rule 56 permits a "party [to] object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). That isn't the objection here.

On October 26, 2017, the railroad's human resources manager informed Mr. Johnson by letter that the FMLA leave he was taking was not consistent with his application. Specifically, he had used four days in a three-week period. She requested that he update his paperwork. On November 7, 2017, Mr. Johnson applied for five days of FMLA leave per month, but he did not submit information about his ability to control his hypertension or his medications until March 22, 2018. On March 23, 2018, his request was approved for five days off per month and no more than two days off per episode.[2]

On June 5, 2018, Mr. Johnson marked a day during the June 9 week when he would be off work for a hernia surgery. Manager Lindner told him he needed to submit FLMA paperwork, as he had not done so for that surgery. He submitted the paperwork without a doctor's signature on June 12, 2018. IHB contacted him, and he said that he was having surgery on July 9, 2018, rather than the June date he offered before. IHB said he needed to submit another request, as his current request went through June 12. He submitted another request on June 14, 2018, and he was granted medical leave to cover the remaining time that would exceed the statutory maximum of sixty days under FMLA. His original leave lasted until August 6, 2018. He was granted an extension of medical leave through August 20, 2018.

On August 14, 2018, Mr. Johnson submitted a request for intermittent FMLA leave for his hypertension, but IHB informed him that he had used all his FMLA leave and that he could not use it again until September 23, 2018. On September 28, 2018, he submitted another request, using his certification form from March 22, 2018. The date appeared to be written over, so IHB asked Mr. Johnson to confirm that his doctor had written over an old form. Mr. Johnson's physician, Dr. Gingerich, denied doing so. IHB suspected Mr. Johnson had written the date over the old form. IHB denied his September 28 intermittent leave request on October 12, 2018.

---

[2] His usage had already exceeded his new allotment and what he had requested. For example, he took seven days off in both January and February 2018.

On November 8, 2018, Mr. Johnson submitted another FMLA request based on his hypertension, now saying "at times his [blood pressure was] out of control," and "that he [was] unable to perform any job functions when his [blood pressure was] elevated." Now that Mr. Johnson had additional days to use, IHB approved his request.

Based on Mr. Johnson's previous over-use of FMLA leave and the blood pressure statements in his most recent certification, IHB's third-party medical consultants recommended that he undergo a fitness-for-duty examination. Comprehensive Care conducted the examination on November 20, 2018. Despite otherwise good results, the consultant declined to qualify Mr. Johnson because, if he was "unable to perform any job functions when his [blood pressure was] elevated" (per his primary doctor), and if his blood pressure was sometimes out of control, then he was "not qualified." The next day, IHB medically disqualified Mr. Johnson and informed him by letter that he could return to work once he showed his blood pressure was under control.

The railroad spoke with Dr. Gingerich at Mr. Johnson's consent. According to IHB, Dr. Gingerich agreed that if Mr. Johnson could not control his blood pressure, he should not be working at the railyard. The doctor also expressed the opinion that Mr. Johnson needed fewer days off in any event.[3] IHB informed Mr. Johnson that he could return to work if he withdrew his FMLA request—the source of IHB's safety concerns—or if he resubmitted and had a doctor's statement that he could perform his job given his blood pressure. Mr. Johnson spoke with Dr. Gingerich and returned to work on December 12, 2018, having withdrawn his FMLA request and submitting a note from Dr. Gingerich clearing him for work. IHB reiterated that Mr. Johnson could still apply for FMLA leave.

---

[3] Mr. Johnson objects to this evidence as hearsay. IHB has not sought to admit this evidence for its truth. Rather, this evidence demonstrates what IHB was told and why it acted, regardless of whether it was true. Like Mr. Otero, Mr. Johnson has not shown why this exhibit, or the information within it, could not be rendered admissible. *See* Fed. R. Civ. P. 56(c)(2).

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

A.     *FMLA Interference Claims.*

An employee with a serious health condition that makes him unable to perform his job functions may receive up to 12 weeks of unpaid leave each year. 29 U.S.C. § 2612(a)(1)(D); *see Ames v. Home Depot USA, Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). The FMLA forbids employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of, or the attempt to exercise" this right. 29 U.S.C. § 2615(a)(1). To pursue a claim for FMLA interference, these two employees must show that (1) they were eligible for FMLA protections, (2) they were entitled to take leave under FMLA, (3) IHB was covered by FMLA, (4) they provided IHB sufficient notice to take leave, and (5) IHB denied or interfered with their FMLA

benefits. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015); *Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 993 (7th Cir. 2010). The denial of FMLA benefits must have caused these employees actual harm or prejudice. *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022).

That said, there are two other ways to bring an interference claim without a showing of a denial of benefits. *See Preddie*, 799 F.3d at 818; 29 C.F.R. § 825.220(b), (c). First, the employee may show that the employer discouraged the employee from using FMLA benefits. *Preddie*, 799 F.3d at 818. Discouragement can manifest as a threat to discipline an employee for FMLA use. *See Ziccarelli*, 35 F.4th at 1089-90. "If [a plaintiff] can demonstrate that [his employer took action against him] to prevent him from exercising his [FMLA] right[s], . . . he can succeed on an interference theory." *Shaffer v. AMA*, 662 F.3d 439, 443-44 (7th Cir. 2011). Second, "[i]nterference also encompasses using the taking of FMLA as a negative factor in employment actions." *Preddie*, 799 F.3d at 818 (quotations and brackets omitted). "An interference claim does not require an employee to prove discriminatory intent on the part of the employer." *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012).

"An employee's right to return to work after taking leave is not unlimited; he is not entitled to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) (quotations omitted); *see also* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). "If an employee's serious health condition may also be a disability within the meaning of the ADA, the FMLA does not prevent the employer from following the procedures for requesting medical information under the ADA." 29 C.F.R. § 825.312(h). Within this landscape, the court turns to each employee's interference claim.

1.     *Mr. Otero's FMLA Interference Claim.*

IHB disputes only the final element of Mr. Otero's FMLA interference claim—that IHB denied his FMLA benefits. Mr. Otero acknowledges that he was never denied FMLA benefits but argues that he was discouraged from taking FMLA leave. He says IHB tried to prevent him from using FMLA benefits and cited its safety concerns as pretext to interfere. He also claims that requiring multiple health examinations violated the FMLA's limitation of one fitness-for-duty examination, and that IHB's "cryptic" standards for him to return to work delayed his return. Further, he argues his FMLA usage was treated as a negative factor in IHB's decision to disqualify him for work medically.

IHB argues that Mr. Otero's FMLA certification form raised fair safety concerns. Although he lost pay pending the second fitness examination, IHB notes that he was reinstated promptly after his treating physician certified that he had none of the issues that caused IHB concern in the first report. IHB says Mr. Otero lacks direct evidence of any discouragement. IHB also argues that multiple examinations were permissible because IHB could request a certification once every 30 days under 29 C.F.R. § 825.312(f) and because the ADA allows such examinations regardless. *See* 29 C.F.R. § 825.312(h).

Mr. Otero's interference claim remains under a negative factor theory. A reasonable jury could conclude that IHB used as a negative factor in its employment decision the fact that Mr. Otero exercised his rights and took FMLA leave. Manager Parchem testified that she considered Mr. Otero's FMLA usage (among other things) when she chose to medically disqualify him. Based on this record, a jury could reasonably infer that IHB considered his prior use of FMLA leave (his usage and his change of usage, the manager says) not only as an influence, but as a negative factor. IHB argues that this was due to a safety concern, but lack of discriminatory intent does not matter for an interference claim. *See Scruggs*, 688 F.3d at 825. A reasonable jury could say the prohibition within the FMLA regulations was violated.

Mr. Otero's claim cannot proceed under a discouragement theory. When "inquiries into the . . . health of an employee are job related and reflect a 'concern[] with the safety of . . . employees,' the

employer may, depending on the circumstances of the particular case, require specific medical information from the employee and may require that the employee undergo a physical examination designed to determine his ability to work." *Krocka v. City of Chi.*, 203 F.3d 507, 515 (7th Cir. 2000). Federal regulations generally limit an employer to one medical fitness-for-duty examination as a condition for returning to work from FMLA leave. *See* 29 C.F.R. § 825.312(b). An employee on intermittent leave may be subject to a certification of fitness to return to duty once every 30 days if "reasonable safety concerns exist regarding the employee's ability to perform his or her duties, based on the serious health condition for which the employee took such leave." 29 C.F.R. § 825.312(f). "The employer may not terminate the employment of the employee while awaiting such a certification of fitness to return to duty for an intermittent or reduced schedule leave absence." *Id.* That said, "[a]fter an employee returns from FMLA leave, the ADA requires any medical examination at an employer's expense by the employer's health care provider be job-related and consistent with business necessity." 29 C.F.R. § 825.312(h). "[T]he FMLA does not prevent the employer from following the procedures for requesting medical information under the ADA." *Id.* Under the ADA, the employer "may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity," including "inquiries into the ability of an employee to perform job-related functions," 29 C.F.R. § 1630.14(c); *see also* 42 U.S.C. § 12112.

An employer isn't prohibited under the FMLA from making inquiries or requiring medical examinations to determine whether the employee can safely perform the job. *See* 29 C.F.R. § 825.312(h); *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 564-65 (7th Cir. 2009) (allowing a "series of evaluations and exams" to determine "fitness for duty" as prescribed by the ADA). A "medical examination is job related and consistent with business necessity if the employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Painter v. Ill. DOT*, 715 F. Appx. 538,

541 (7th Cir. 2017). The ADA regulations do not limit job-related medical examinations to one test. *See id.* at 541-43 (evaluating multiple examinations).

No one contests that the additional examinations occurred after Mr. Otero returned from FMLA leave. *See* 29 C.F.R. § 825.312(h). The record establishes that IHB required additional medical examinations for job-related reasons consistent with business necessity, and no reasonable jury could conclude otherwise. *See id.* Mr. Otero's ability to operate a locomotive safely was a job-related safety concern and undoubtedly one necessary to the business enterprise. In complying with the ADA's allowance in this respect, IHB likewise complied with the FMLA's allowance, which under these particular circumstances permitted additional medical examinations. *See id.* The examinations occurred with IHB's healthcare providers and at its expense, not with Mr. Otero's physician, thus consistent with this FMLA/ADA allowance.

The court recognizes that IHB at times may have mislabeled or merged the naming of its notices about these examinations and thereby invited the argument that it acted cryptically—whether, for instance, the railroad required these tests in the context of FMLA certification or under the ADA. In IHB's first letter to Mr. Otero, IHB titled the letter "FMLA" and told Mr. Otero he was scheduled for a "fitness for duty exam based on the information on [his] certification form" [ECF 73-4]. The next letter spoke of his medical disqualification "due to the safety sensitive nature of [his] job," thus hearkening back to the ADA [ECF 73-9]. When he was medically disqualified without pay, IHB said he had been sent for a "fitness for duty examination as well as a FMLA second opinion examination" [ECF 73-15]. The conclusion remains nonetheless that the law permitted these additional examinations—with the FMLA incorporating the ADA's allowance in this context—and no reasonable jury could say the mere use of "FMLA" in the notice, perhaps better said to be the FMLA through the ADA or just the ADA, discouraged Mr. Otero's use of FMLA leave. An alleged wrong acronym wasn't a discouragement. Nor was the lawful requirement of additional examinations.

Although the court must grant summary judgment on this theory of interference, the court must deny summary judgment given that a reasonable jury could say IHB used Mr. Otero's taking of FMLA leave as a negative factor in its employment action. *See Preddie*, 799 F.3d at 818. On that basis alone, the court denies the summary judgment as to Mr. Otero's FMLA interference claim.

2. *Mr. Johnson's FMLA Interference Claim.*

Mr. Johnson argues that he decided not to renew his FMLA leave ever since IHB told him he could either withdraw his FMLA request or submit a signed writing from his physician stating why he needed FMLA leave for flare-ups and how he could reconcile that with his ability to perform his job. Mr. Johnson contests IHB's argument that the FMLA regulations permitted IHB to send Mr. Johnson to a fitness-for-duty examination. Finally, Mr. Johnson argues that IHB's supposed safety concerns were based on his FMLA usage rather than objective evidence.

IHB argues that it was permitted to submit Mr. Johnson to a fitness-for-duty examination because of underlying safety concerns, not his FMLA usage. IHB supports this argument with Mr. Johnson's recertification form, which claimed he could not perform any job function when his blood pressure was elevated. IHB contends that Mr. Johnson's claim fails because he was never denied FMLA rights. Finally, IHB argues that its proffered choice that caused Mr. Johnson to withdraw his FMLA request was not interference—it was an attempt to remove any safety concerns caused by information supporting the FMLA request.

*Ziccarelli*, 35 F.4th at 1081, is instructive. In *Ziccarelli*, an employee worked in a sheriff's department for nearly thirty years, periodically taking FMLA leave. After a conversation with his FMLA manager, he decided to retire. *Id.* The employee testified that his manager told him he would be disciplined if he took any more FMLA leave. *Id.* at 1082. The employee's testimony as to what his FMLA manager told him created a triable issue of fact because a reasonable jury could determine that his employer discouraged him from exercising his FMLA rights. *Id.* at 1090.

IHB offered a quite different choice—either withdraw his request for FMLA leave because his doctor said later his condition was "well controlled" and he did not need five days off per month, or resubmit his FMLA request with clarification from his physician about his flare-ups and why five days off per month were needed. The manager in *Ziccarelli* promised discipline if the employee continued using his FMLA leave. IHB facilitated his leave while continuing to investigate its legitimate safety concerns— particularly based on a representation in Mr. Johnson's FMLA application that said he could not perform his job duties anytime his blood pressure was elevated because he would become incapacitated. IHB needed Mr. Johnson to clear up the confusion by submitting a new doctor's note or withdrawing his FMLA request. Mr. Johnson elected to do both. He has presented no evidence that IHB discouraged his leave in making this reasonable request or offering this choice, or took any employment action because he exercised his right to FMLA leave. No reasonable jury could thus find for Mr. Johnson.

Mr. Johnson cites *Goodwin-Haulmark v. Menninger Clinic, Inc.*, 76 F. Supp.2d 1235, 1242 (D. Kan. 1999) (quotation omitted), which held that "by forcing plaintiff to choose between resignation and working without leave, defendant interfered with plaintiff's rights by discouraging an employee from using [FMLA] leave." That case featured intense pressure to resign from the employer and supervisors. *See id.* at 1237. But that did not happen to Mr. Johnson. In offering a reasonable choice to Mr. Johnson to facilitate his work or his leave, IHB gave him all the resources his doctor needed to determine whether he could safely perform his duties, including detailed job descriptions. He still had the option to keep working and receive FMLA leave—he just needed to clarify how controlled his blood pressure was. Those concerns were based on his doctor's note. Merely sending his FMLA history to the medical consultant does not show interference, and Mr. Johnson hasn't otherwise argued here that IHB relied on his FMLA usage to reach its decision. No reasonable jury could see it otherwise. The court grants summary judgment on Mr. Johnson's FMLA interference claim.

B.      *FMLA Retaliation Claims.*

For FMLA retaliation, the court evaluates the claim the same way retaliation or discrimination claims are evaluated under other labor statutes. *Pagel v. Tin Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). The law uses a holistic approach that poses a singular question: whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's exercise of his FMLA rights was a substantial or motivating factor in the adverse employment action against him. *See Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1307 (7th Cir. 2022); *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367-68 (7th Cir. 2019). The court considers the evidence as a whole. *McDaniel*, 940 F.3d at 367-68.

That said, "the well-known and oft-used *McDonnell Douglas* framework for evaluating [retaliation] remains an efficient way to organize, present, and assess evidence in [retaliation] cases." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "There is no magic to this test; it is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's [FMLA usage]." *Johnson*, 892 F.3d at 894.

Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate that (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action despite his reasonable performance, and (4) similarly situated employees who were not members of his protected class were treated more favorably. *See McDaniel*, 940 F.3d at 368 (using framework after *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). If he meets his burden on each element of his *prima facie* case, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the adverse employment action;" if the employer carries that burden, the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. *Id.*

A plaintiff may also use a direct approach that requires him to show that he engaged in a statutorily protected activity, he suffered a materially adverse action at the hands of the employer, and there is a

causal connection between the two. *Anderson*, 27 F.4th at 1307. All told, the plaintiff "need not prove that retaliation was the only reason for [the adverse action]; [he] may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741-42 (7th Cir. 2008) (quotations omitted).

             1.     *Mr. Otero's FMLA Retaliation Claim.*

IHB argues that under a direct approach, Mr. Otero cannot show a causal connection. IHB also contends that Mr. Otero cannot show that there was a similarly situated employee who was treated better under the *McDonnell Douglas* framework. Even if Mr. Otero could point to a similarly situated employee, IHB asserts that it can provide a non-retaliatory reason for Mr. Otero's disqualification—that the nature of his FMLA requests triggered safety concerns that ultimately led to his disqualification.

Mr. Otero argues that IHB relied on his FMLA usage rather than actual knowledge of his condition. He argues that his FMLA usage was the motivation behind his tests and disqualification. Mr. Otero contends that circumstantial evidence exists for a reasonable jury to conclude that IHB retaliated against Mr. Otero for using his FMLA leave.

Mr. Otero declines the *McDonnell Douglas* analysis, leaving the court to conclude that no similarly situated employee exists and that Mr. Otero cannot present a *prima facie* case under that rubric. Mr. Otero instead relies on a direct approach to establish a causal connection. "The direct method of proof permits inferences drawn from circumstantial evidence—the plaintiff can rely on a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Juday v. FCA LLC*, 57 F.4th 591, 596 (7th Cir. 2023). Mr. Otero must "produce evidence from which a reasonable jury could infer that [safety] was not [IHB's] real reason for [his medical disqualification] and that the company was instead retaliating against him for exercising his statutory leave rights." *Id.*

Mr. Otero points to IHB's decision to examine and disqualify him after he submitted an FMLA application as evidence of retaliation. The court need not proceed much beyond IHB's testimony to

decide whether a reasonable jury could find that Mr. Otero's use of FMLA leave motivated IHB's decision to disqualify him medically. IHB's manager said it did: "It was something that I considered when I disqualified him. . . . [O]ver time it was increasing, indicating to me that there was an issue, and the fact that he was using it even more than what his doctor was saying that would be necessary. So it's not that he used it. It's how he used it and how much and that it was increasing over the years and, you know, especially how many days in that last year he used outside of what the doctor had recommended." She said, "his usage over the course of [2016-2018] had increased and [] he was using it outside of what was in the FMLA." She said that, among other information, she considered "the prior FMLA's, [and] the change in his usage." Rather than focus just on his medical condition or what that might reveal about safety concerns, IHB's manager cited specifically his FMLA usage, his increased usage, and his increased usage over time. The parties might have a legitimate debate about whether IHB's focus and rationale were merely based on safety concerns or the precise fact that Mr. Otero took FMLA leave, but that issue of credibility is for the jury. *See Williams v. City of Chi.*, 733 F.3d 749, 752 (7th Cir. 2013) ("Neither we nor the district court can resolve issues of credibility when deciding a motion for summary judgment."). On the question of whether FMLA usage was a motivating factor in IHB's employment decision, the jury could reasonably say it was. The court thus denies summary judgment on Mr. Otero's retaliation claim.

2.     *Mr. Johnson's FMLA Retaliation Claim.*

Mr. Johnson argues that his FMLA usage was a motivating factor in IHB's decision to disqualify him. He supports this theory by arguing that there is a lack of evidence that his hypertension was not well-controlled—besides his own FMLA application. He contends that he has long had "flare-ups," but he has never had uncontrollable hypertension, and he claims that his FMLA request indicated nothing to the contrary. Mr. Johnson also designates testimony that IHB considered his FMLA usage in its decision to disqualify him medically.

IHB argues that Mr. Johnson has presented no evidence that IHB intended to retaliate or that he was treated less favorably than a similarly situated employee. Even if he could present such evidence, IHB says it has consistently stated and supported with evidence from third-parties that Mr. Johnson's examination and disqualification were born out of safety concerns created by Mr. Johnson's application. IHB argues that it has a duty to safety as a railroad and that there is no evidence that IHB's safety concerns were pretext for underlying animus.

Mr. Johnson decries the lack of evidence that his hypertension was not well-controlled, yet he is the one who created the confusion by submitting an application that indicated it wasn't well-controlled. He does not dispute that his job requires him to be always alert and attentive, and he hasn't disputed that his FMLA certification said he could become incapacitated at any time. Mr. Johnson complains that IHB told Dr. Conibear that he had used more than his allotted FMLA leave, but he doesn't explain why Dr. Conibear shouldn't legitimately have that knowledge when reviewing an FMLA request.

The court nevertheless must deny the summary judgment here for the same reason as it does for Mr. Otero. Working only with the direct evidence approach, Mr. Johnson cites testimony that IHB considered his FMLA leave and increased use of leave as a motivating factor for its employment decision. When asked why IHB disqualified Mr. Johnson, the railroad's manager cited his "prior FMLAs" and that he was "using more days than he's supposed to be pursuant to his doctor." The railroad also identified other evidence, including physician statements and medical history, but a reasonable jury could find that a motivating factor for IHB's decision was his use of FMLA leave when its manager testifies that it was a motivating factor.[4] Accordingly, the court denies summary judgment on Mr. Johnson's retaliation claim.

---

[4] The court observes that, in making this argument, Mr. Johnson cites paragraph 56 of his additional facts, though plainly he meant to refer to paragraph 55. That being said, nowhere has he argued this point to support an FMLA interference claim, so the court never reaches that issue. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010).

C.      *ADA Disparate Treatment Claims.*

The Americans with Disabilities Act exists to eliminate "discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It applies to qualified individuals "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Under the ADA, there are two types of discrimination claims: failure to accommodate and disparate treatment." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 n.4 (7th Cir. 2015).

To bring an ADA disparate treatment claim, a plaintiff must show that "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *McCann v. Badger Mining Corp.*, 965 F.3d 578, 588 (7th Cir. 2020); *see also* 42 U.S.C. § 12112(a). This is a "but for" test. *McCann*, 965 F.3d at 588 n.46. The court looks at the evidence holistically. *See id.* at 588-89 (citing the holistic approach in *Ortiz v. Werner Enters.*, 834 F.3d 760, 764 (7th Cir. 2016)). Under the direct method, the "ultimate question" is "[w]hether a reasonable juror could conclude that [the plaintiff] would have kept his job if he [was not disabled], and everything else had remained the same." *McCann*, 965 F.3d at 588-89. "One way to meet this            burden … is for the plaintiff to show[] that the stated reasons for the firing were pretextual." *Id.* at 589 (quotations omitted). "In evaluating pretext, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge'" *Id.* (quotations omitted). ADA discrimination claims also may be evaluated through the indirect method of *McDonnell Douglas. See Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 792 (7th Cir. 1997).

"The ADA explicitly recognizes as a defense to a charge that the plaintiff has been denied employment as a result of qualification standards that 'screen out or tend to screen out' individuals with disabilities, the assertion that such standards are 'job-related and consistent with business necessity' and

that performance of the job cannot be satisfied through a reasonable accommodation." *Felix v. Wis. DOT*, 828 F.3d 560, 569 (7th Cir. 2016) (citing 42 U.S.C. § 12113(a)). This is a "direct threat" affirmative defense. A "direct threat" is a "significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). "The determination that an individual poses a 'direct threat' [must] be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment [must] be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." *Id.*

1.    *Mr. Otero's Disparate Treatment Claim.*

IHB argues that Mr. Otero has presented no evidence necessary to support a disparate treatment claim. Mr. Otero argues that IHB has employed the "direct threat" defense to his disparate treatment claim, requiring IHB to prove in a demonstrative manner that Mr. Otero presented a direct threat to the safety of himself, his coworkers, and the public. *See Felix*, 828 F.3d at 570 ("evidence [must be] so one-sided that no reasonable jury could resolve the defense in [the plaintiff's] favor"). He says IHB disqualified him without him ever being a direct threat.

Mr. Otero presents no evidence that a similarly situated employee outside his protected class was treated better. His option of using the indirect method of proof thus cannot succeed. In truth, he focuses on a direct method. Even so, he has presented no evidence that IHB's safety concerns were pretextual in nature. He presents no evidence to support a direct approach, just assumptions [*see, e.g.,* ECF 83 at 18-19 (IHB "cannot reasonably dispute [Mr. Otero] is otherwise qualified to perform the requirements of his job as a locomotive engineer with the reasonable accommodation of FMLA leave")]. Mr. Otero's disparate treatment argument rests largely on IHB's direct threat defense.

IHB broadly asserts that its safety concerns, not Mr. Otero's disability, caused his temporary disqualification. IHB argues that Mr. Otero could not work under the accommodation proposed by Dr.

19

Bakston—for example, that Mr. Otero needed to have another conductor on board the train with him. IHB contends that Mr. Otero posed a direct threat to the safety of his co-workers and members of the general public, and not least himself.

The record proves to be Mr. Otero's shortcoming today. He cannot make a case of disparate treatment under his direct method. He says he was qualified to perform his job as a locomotive engineer with the reasonable accommodation of FMLA leave. He says this was precisely the basis on which he was ultimately reinstated, but his "ability to come to work, or to otherwise perform the essential functions of [his] job, is examined as of the time of the adverse employment decision at issue." *Basden v. Prof'l Transp., Inc.* 714 F.3d 1034, 1037 (7th Cir. 2013). As he concedes, at the time of the employment decision to disqualify him medically, Mr. Otero needed by definition an unreasonable accommodation—an extra conductor on board the locomotive. He could not work without this accommodation. Both sides agree this accommodation was unreasonable. He thus cannot show he was qualified to perform essential functions of his job when IHB medically disqualified him. No reasonable jury could find that Mr. Otero could establish a *prima facie* case of disparate treatment.

Mr. Otero decries IHB's lack of objective evidence, but IHB, Dr. Conibear, and Dr. Bakston relied on an evaluation from his own doctor. And the court looks at the decision to disqualify Mr. Otero through IHB's eyes. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). IHB saw reports from multiple third-party doctors who indicated he could not safely operate a locomotive. "Even if the . . . medical opinions were demonstrably flawed, [the employer's] reasonable reliance upon them is not discriminatory . . . . [s]o long as the [employer] relied on [their] opinions in good faith." *McDonald v. Webasto Roof Sys.*, 570 F. Appx. 474, 477 (6th Cir. 2014) (citations omitted). Mr. Otero has presented no evidence that IHB relied on these medical opinions in bad faith. The court thus grants summary judgment for IHB on Mr. Otero's ADA disparate treatment claim.

2.       *Mr. Johnson's ADA Disparate Treatment Claim.*

The ADA prohibits employees from discriminating against a qualified individual on the basis of disability, *see* 42 U.S.C. § 12112(a), and Mr. Johnson claims that he was treated worse than similarly situated, non-disabled employees because of his hypertension. He says IHB required him to submit to a fitness-for-duty examination and later medically removed him from service because of his disability. He argues that IHB medically disqualified him without any objective evidence that his disability created a significant threat to safety.

IHB tackles the fitness-for-duty examination first. The ADA permits medical examinations of qualified individuals when "such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). A "medical examination is job-related and consistent with business necessity when an employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Coffman*, 578 F.3d at 565. Indisputably, a conductor's ability to coordinate the movement of a train and to be alert to its operation and the safety of coworkers and the public in its vicinity are essential job-related functions and consistent with the railroad's business needs. Mr. Johnson argues that IHB lacked objective evidence of a medical condition that would impair his ability to perform these tasks; but its consultant recommended, based on his primary physician's conclusion, that he could not perform any job functions when his blood pressure was elevated, and at times his blood pressure was out of control. No reasonable juror could conclude that this wasn't in fact objective evidence of an impairing medical condition, nor could a reasonable juror call IHB's decision pretextual based on this point.

Without a *prima facie* case of disparate treatment there, the parties turn next to IHB's decision to disqualify Mr. Johnson medically. The parties engage over the direct method of proof, not the indirect method. *See McCann*, 965 F.3d at 588. IHB argues its individualized assessment of Mr. Johnson revealed

him to be medically unqualified—a well-known and reasonable requirement in the railroad industry. IHB also contends that this conclusion constituted a legitimate and non-discriminatory reason for its decision. Mr. Johnson more assumes than counters the argument that medical disqualification meant he was not qualified, and he foregoes the presentation of any evidence to put in dispute IHB's proffer of its legitimate and non-discriminatory reason. He says only that it was nonsensical for IHB's concerns to be resolved by his withdrawing his FMLA certification, and that this somehow shows pretext. It does no such thing for a reasonable jury.

These points suffice to grant summary judgment for IHB on the ADA disparate treatment claim because Mr. Johnson has not designated evidence of a triable issue on his *prima facie* case, either using an indirect or direct method. The parties materially engage hereafter on IHB's direct threat defense. The "'direct threat' issue arises . . . only after an ADA plaintiff has made out a *prima facie* case." *Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 603 (7th Cir. 1999). Even then, the direct threat defense "is meant to be applied in cases alleging discriminatory application of qualification standards as opposed to cases in which a plaintiff alleges disparate treatment, which may be justified by a legitimate, non-discriminatory reason." *Felix*, 828 F.3d at 572 (quotations omitted).

Even if the court reached this subject, Mr. Johnson's point—that IHB favored a generalized rather than individualized assessment of his ability to perform the essential functions of his job safely— isn't borne out by the record. *See Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004) ("ADA require[s] an individualized assessment of each plaintiff's 'actual condition,' rather than a 'determination based on general information about how an uncorrected impairment usually affects individuals.'"); *see also Felix*, 828 F.3d at 570 (IHB must submit evidence "so one-sided that no reasonable jury could resolve the defense in [plaintiff's] favor"). He argues that he must have not presented a safety concern because he resumed work after his doctor cleared up his condition. But, like the ability to perform the job's essential functions, *see Basden*, 714 F.3d at 1037, the law looks at the state of knowledge at the time IHB took its

adverse employment action, not after, *see* 29 C.F.R. § 1630.2(r) (individualized assessment of individual's "present ability" based on "most current medical knowledge" or "best available objective evidence"). The court grants summary judgment accordingly.

> D.     *Mr. Otero's ADA Accommodation Claim.*

For an ADA failure-to-accommodate claim, Mr. Otero must show he was a qualified individual with a disability, his employer was aware of his disability, and his employer failed to accommodate his disability reasonably. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). ADA regulations allow an employer to apply "qualification standards" that result in adverse employment action to a disabled individual if they are "job-related and consistent with business necessity." 29 C.F.R. § 1630.15(b)(1).

"The employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) (quotations omitted). "[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.*

IHB argues that Mr. Otero has presented no evidence of how the railroad could have reasonably accommodated him. IHB notes that the only accommodations that could have kept Mr. Otero at work would require IHB to create a new job, which is patently unreasonable. IHB asserts that adding a second conductor to the rail car would potentially violate other employment contracts and agreements. Mr. Otero concedes that the accommodation suggested by Dr. Bakston—the only possible accommodation for Mr.

Otero to continue working—was not reasonable. Mr. Otero instead argues that he could have been accommodated simply by taking his FMLA leave when needed.

This argument misses the mark. According to Dr. Bakston, Mr. Otero needed another person in the locomotive with him while he was at work to monitor his alertness. His FMLA use does not address his at-work accommodation. He received the FMLA leave he requested; he just couldn't work safely without an accommodation while at work, according to Dr. Bakston.

Without a reasonable accommodation in hand, Mr. Otero shifts toward perceived shortcomings of the interactive process. As an example of a true shortcoming, the employer in *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1061-62 (7th Cir. 2014), fired an employee without speaking to her or her doctor or considering a medical evaluation. No such thing happened here. IHB had Mr. Otero evaluated multiple times, worked consistently to determine a reasonable manner to proceed, and communicated along the way with multiple individuals, including Mr. Otero and his physician. Even if IHB could be said to have fallen short in the interactive process, "an employer's failure to engage in the interactive process alone is not an independent basis for liability." *Id.* at 1062. It only becomes so if the employer obstructs the process of finding an appropriate accommodation for a qualified individual. *Id.*; *Beck*, 75 F.3d at 1137. This process worked toward a solution—leading, after delays outside the interactive process because of his physician's unavailability, to Mr. Otero's return to work. The court thus grants summary judgment on this claim.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART IHB's summary judgment motions—disposing of all ADA claims but retaining for the jury the FMLA claims of both Luis Otero [ECF 67] and Zachary Johnson [ECF 70], except Mr. Johnson's FMLA interference claim. In short, this case will proceed to the jury on Mr. Otero's FMLA interference and retaliation claims and Mr. Johnson's FMLA retaliation claim only.

SO ORDERED.

March 24, 2023                          _s/ Damon R. Leichty_____
                                        Judge, United States District Court