UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

LUIS OTERO and ZACHARY JOHNSON,

Plaintiffs,

v.

CAUSE NO. 2:19-CV-396 DRL

INDIANA HARBOR BELT RAILROAD CO.,

Defendant.

OPINION AND ORDER

Indiana Harbor Belt Railroad Co. (IHB) moves to exclude testimony of Luis Otero's medical witness, Dr. Louis H. Philipson, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Luis Otero and Zachary Johnson move to exclude the opinion testimony of four IHB witnesses: railroad safety witness Brian Heikkela; medical doctor Shirley Conibear; and two IHB human resource managers, Melanie Lindner and Nicole Parchem. Given the state of the case today, the court grants IHB's motion, denies the employees' motion, except to exclude testimony by Dr. Conibear on the medical concerns stemming from Mr. Johnson's hypertension.

STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the witness has "reliably applied the principles and methods to the facts of the case" in such a way that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although analysis under Rule 702 remains at all times flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of what makes expert opinion admissible are well understood, *see Constructora Mi Casita, S de R.L. de C.V. v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020).

In short, the Federal Rules of Evidence strike a balance between two competing concerns: the apprehension for the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination, contrary and compelling evidence, thoughtful jury instructions, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

The court needn't conduct an evidentiary hearing here. No party has requested one. The briefing, proffered expert reports, medical records, exhibits, and deposition testimony also permit the court to rule. *See, e.g.*, *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *Target Mkt. Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998).

DISCUSSION

The court recently ruled on summary judgment motions that provide background for this case. *See Otero v. Indiana Harbor Belt R.R. Co.*, 2023 U.S. Dist. LEXIS 50325 (N.D. Ind. Mar. 24, 2023). Mr. Otero retains two claims for trial—both interference and retaliation under the Family and Medical Leave Act (FMLA). Mr. Johnson proceeds only on an FMLA retaliation claim.

Mr. Otero's FMLA interference claim requires the jury to decide whether IHB used his FMLA usage as a negative factor when it decided to medically disqualify him without pay. *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015). The FMLA retaliation claims require the jury to assess whether each employee's FMLA usage was a motivating factor in IHB's decision likewise to disqualify them without pay. *See Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741-42 (7th Cir. 2008).

2

A. *Brian Heikkela.*

The employees move to exclude opinions from Brian Heikkela. He is a railroad safety witness with more than 45 years of experience in the railroad industry. He has held the positions of switchman, conductor, locomotive engineer, director of training rules and safety, and others. He has trained, supervised, and qualified hundreds of engineers, switchmen, and conductors. He is a member of several professional organizations, including the Air Brake Association, The International Association of Railway Operating Officers, and the American Association of Railroad Superintendents. He is generally expected to opine that IHB took reasonable and appropriate steps for the safety of the railroad and its employees.

The employees attack only the helpfulness of Mr. Heikkela's opinions. A court should exclude testimony unless it speaks, without confusing or misleading the jury, to a relevant issue that the jury must decide. *See* Fed. R. Evid. 403, 702; *see, e.g., Hartman v. EBSCO Indus.*, 758 F.3d 810, 819 (7th Cir. 2014). To be helpful, the opinion must aid the jury to decide an issue of consequence. The court must determine whether an expert's "reasoning or methodology properly can be applied to the facts in issue," *Daubert*, 509 U.S. at 593, and whether the witness's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a). Opinions must be tied to case facts and issues. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). This is what is commonly called fit. *See Daubert*, 509 U.S. at 591.

An opinion must be "something more than what is obvious to the layperson," *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998) (internal quotation omitted), though an "opinion may overlap with the jurors' own experiences or cover matters that are within the average juror's comprehension, so long as the expert uses some kind of specialized knowledge to place the litigated events into context," *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 2877 (2021) (internal quotations and alterations omitted).

The employees seek to exclude three opinions from Mr. Heikkela. They say his opinions are simply irrelevant and cannot assist the trier of fact in understanding the evidence or determining any fact at issue. First, they argue that his opinion that Dr. Bakston's recommended accommodation for Mr. Otero was unreasonable is irrelevant because Mr. Otero concedes that it was unreasonable. A party's concession doesn't necessarily deprive a party of the right to present evidence. The FMLA claims remain, and IHB is right that there are "safety related issues" that this testimony addresses, such as the dangers of driving a train alone in the railyard and Mr. Otero's responsibility stopping the train. Mr. Otero's ability to work safely remains relevant, and the unreasonableness of adding another conductor on board is still helpful testimony to assess the safety risk Mr. Otero presented while driving a train alone. Indeed, IHB will in part defend by arguing these safety concerns as a counter-message to the claim that it used Mr. Otero's FMLA usage as a negative factor to disqualify him medically.

Second, these employees argue that two other opinions from Mr. Heikkela are unhelpful: that IHB made a safe decision to ensure Mr. Otero's diabetic condition was under control before returning him to work and that IHB's decision to disqualify Mr. Johnson until his treating physician addressed his condition was a significant safety concern. The sole reason offered as to why these opinions are unhelpful is that they do not fit into the direct threat defense under the Americans with Disabilities Act (ADA). The ADA claims are gone, so this argument no longer proves cogent. A railroad safety expert testifying as to whether it was a safe decision to remove these men from work fits the jury's determination of whether IHB's stated safety reasons were pretext for FMLA retaliation. The court denies the motion to exclude accordingly.

B.     *Dr. Shirley Conibear.*

The employees seek to exclude Dr. Shirley Conibear's testimony. Dr. Conibear is a licensed physician who used to be certified in family medicine and occupational medicine. She practiced family and occupational medicine for 40 years. She owns OMS, a company that does medical examinations and

4

evaluations as well as OSHA-driven testing, among other things. This company works with IHB to review FMLA leave requests. Having worked for railroads, she is familiar with the job duties of locomotive engineers. For Mr. Otero, Dr. Conibear is expected to testify that his diabetes condition raised a legitimate concern whether he could safely perform his job. For Mr. Johnson, Dr. Conibear is expected to testify that it was reasonable for IHB to rely on her opinions in disqualifying Mr. Johnson.

The employees argue that Dr. Conibear's testimony is not based on sufficient facts or data. An opinion witness must next have a sound factual basis before being declared an expert. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 590. Even if eminently qualified, experts cannot offer opinions based solely on their say-so (what lawyers call ipse dixit). *See Kumho Tire*, 526 U.S. at 157; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony must be based on sufficient and known facts. *Daubert*, 509 U.S. at 590; Fed R. Evid. 703; *see, e.g., Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (evidence of one sale was an insufficient basis to calculate an average of sales over twenty years); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007) (excluding expert because the "mere existence of a temporal relationship" was an unreliable basis to show a causal relationship between medication and symptoms).

The employees take issue with Dr. Conibear's testimony that statements on Mr. Otero's certification form—most notably that he "may experience hypo- or hyperglycemic episodes (episodes of incapacity) flare-ups"—gave her "serious concerns." They object that this would create a reasonable expectation that he would not be able to safely operate a train. They find it insufficient that she based her conclusion on this note and that he was "frequently us[ing] his FMLA leave for hypoglycemia." They cite testimony that she didn't know the frequency of his hypoglycemia, how quickly it came on, or what his symptoms were, as well as the fact that she did not personally examine him.

On this record, these are not objections rendering Dr. Conibear's testimony vis-à-vis Mr. Otero inadmissible. These issues go to weight, not admissibility. "Assuming a rational connection between the data and the opinion . . . an expert's reliance on faulty information is a matter to be explored on cross-

5

examination; it does not go to admissibility." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 710 (7th Cir. 2013). "Our system relies on cross-examination to alert the jury to the difference between good data and speculation." *Schultz v. Akzo Nobel Paints*, 721 F.3d 426, 432 (7th Cir. 2013). Dr. Conibear didn't reach these conclusions blindly, having testified that she read Mr. Otero's FMLA certification form, reviewed his FMLA usage history, his job description, fitness-for-duty examination results, and her rather deep experience. She said she had safety concerns because "anyone who is in charge of moving the train, if they suffer episodes of incapacity, it could result in injury to not just themselves but to their fellow workers and also to the surrounding community, which is the highest level of concern." The employees have not argued that her qualifications or methodology suffer. If they take issue with the conclusion she reached from arguably faulty or incomplete information, that is a matter for the jury to weigh. *Manpower*, 732 F.3d at 710.

Not so for Mr. Johnson. Dr. Conibear repeatedly testified that she had no recollection of Mr. Johnson's facts and largely seems to have been uninvolved [*see* ECF 79-26 at 55-56, 58, 71]. She couldn't recall the health condition for which he sought FMLA leave, the symptoms he experienced, or why another doctor recommended he submit to a fitness-for-duty examination [*id.* 71-72]. IHB responds that, rather than Dr. Conibear, a physician's assistant from her business (Al Vega, P.A.) was responsible for disqualifying Mr. Johnson; and no challenge has been made to his testimony. That reads as much a concession as explanation. IHB argues that Dr. Conibear expressed safety concerns about not just Mr. Otero but Mr. Johnson too, though the company cites no evidence for this statement.[1] "[Though] one expert may rely on another expert's work, [she] cannot serve as a mere mouthpiece in order to circumvent the Rules of Evidence." *United States v. Truitt*, 938 F.3d 885, 891 n.1 (7th Cir. 2019). It does not seem here that Dr. Conibear merely relies on another expert's opinion, but proposes to parrot it, and worse yet

---

[1] IHB cites testimony from Dr. Conibear [ECF 73-37 at 190-191], but it concerns Mr. Otero only.

without a factual understanding of the circumstances. That makes her opinion unreliable. *See Varlen*, 924 F.3d at 459; *see also Kumho Tire*, 526 U.S. at 150.

The two employees also attack Dr. Conibear's testimony on grounds of fit. They argue that these opinions are not helpful to aid the jury in deciding whether IHB violated the ADA. With the ADA claims resolved, and with no argument about Dr. Conibear's testimony as it relates to the FMLA, the court must deny the motion as it concerns Mr. Otero. The court struggles to see how her testimony would be askance the FMLA retaliation claims, just as an example. IHB may "articulate a legitimate, nondiscriminatory reason for the adverse employment action," such as safety. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). Her medical testimony will help the trier of fact determine whether IHB had a legitimate safety concern vis-à-vis Mr. Otero. Given her lack of knowledge or study about Mr. Johnson's circumstances, any opinion she might wish to offer about his medical circumstances would invite the jury merely to speculate; hence, such an opinion would be unhelpful. *See Daubert*, 509 U.S. at 590 (expert opinion cannot be based on "subjective belief or unsupported speculation"); *Logan v. City of South Bend*, 564 F. Supp.3d 719, 733 (N.D. Ind. 2021) ("the law won't permit juries to speculate"). Accordingly, the court denies the motion to exclude Dr. Conibear's testimony as it relates to Mr. Otero, but grants the motion as it concerns Mr. Johnson.

C. *Manager Lindner and Director Parchem.*

The employees seek to exclude the testimony of Manager Lindner and Director Parchem. Manager Lindner has worked for IHB since 2011. She is responsible for processing FMLA and medical leave paperwork for the railroad. She also processes requests for disability accommodations. In her role, she has handled employees who need to get their diabetes under control as well as those experiencing blood pressure issues. She will testify about the essential job duties of a locomotive engineer and trainman, safety considerations, and her knowledge of the facts about Mr. Otero and Mr. Johnson's cases.

7

Director Parchem has held her role as the director of IHB's human resources and labor relations since 2017. In her role, Director Parchem handles FMLA requests and supervises Manager Lindner. She also handles the collective bargaining appeals process. She has extensive knowledge of railroad safety requirements and job functions. She will testify as to the essential job duties of IHB employees, the safety considerations when she reviews FMLA requests, collective bargaining considerations, and the facts of Mr. Otero and Mr. Johnson's cases.

The employees attack Manager Lindner and Director Parchem's testimony as irrelevant and lacking in expert qualifications. But, to this point, the employees have not identified an opinion or subject matter these witnesses will discuss that seemingly would require the kind of specialized knowledge subject to Rule 702. As the employees acknowledge, Manager Lindner and Director Parchem were not retained or specifically employed to give expert testimony, and IHB's disclosures identify no relevant opinions that either witness will give in her testimony and provide no basis for concluding that either is an expert. The employees also contend that these witnesses are merely offering testimony about the parties' actual course of action in this case, based on their own perceptions and knowledge.[2]

IHB doesn't fight this position, stating that IHB disclosed Director Parchem as both a fact and an opinion witness to avoid any preclusion of her testimony by virtue of a later argument that her testimony should be classified or elevated to expert status, or that it should be excluded because it was not properly disclosed. For Manager Linder, IHB notes that the employees seem to concede her anticipated testimony will be admissible as lay opinion under Rule 701. Because both sides seem to agree that neither Director Parchem nor Manager Lindner will testify on subject matter elevating their opinions

---

[2] The employees cited only two statements from Manager Lindner: that a medical professional's opinion "must be addressed" and that declining to follow that opinion would be "irresponsible." The only statement that the employees identified from Director Parchem was that she didn't think Dr. Bakston understood "how hard it is to stop a train if there is no air in the cars."

8

to expert classification, and because this record reveals no such opinions, the court will not exclude their testimony under Rule 702.

   D.   *Dr. Louis H. Philipson.*

IHB moves to exclude Mr. Otero's medical witness, Dr. Louis H. Philipson. Dr. Philipson is a board-certified physician in internal medicine and endocrinology, diabetes, and metabolism. He administers the Kovler Diabetes Center, a center dedicated to clinical and translational research. He says his medical practice focuses entirely on diabetes and issues related to diabetes. This has been the case for 35 years.

Mr. Otero plans to present two opinions from Dr. Philipson: (1) that from July 30, 2018 (when Mr. Otero submitted his FMLA certification form) through January 9, 2019 (when he was reinstated), Mr. Otero managed his diabetes such that it did not pose a significant risk of substantial harm to the health or safety of himself or others, and any possible perceived risk could have been eliminated or reduced by reasonable accommodations, and (2) that IHB did not rely on sufficient information to form a reasonable medical judgment as to whether Mr. Otero's diabetes was a significant risk to safety.

IHB attacks Dr. Philipson's testimony on three grounds. First, the company argues that Dr. Philipson's opinions are not based on sufficient facts or data. Second, IHB contends that Dr. Philipson's opinions are not the product of reliable principles and methods. Finally, IHB says Dr. Philipson's opinions are based on more information than IHB had at the time it decided to disqualify Mr. Otero medically. The court addresses each argument in turn, though without the ADA claims in this case it seems the third inquiry (fit) materially drives the result.

   1.   *Sufficient Facts and Data.*

Again, an opinion witness must have a sound factual basis to be declared an expert. Fed. R. Evid. 702(b), 703; *Daubert*, 509 U.S. at 590. Expert testimony must be based on sufficient and known facts. Fed R. Evid. 702; *Daubert*, 509 U.S. at 590. "The critical inquiry is whether there is a connection between the

data employed and the opinion offered" and whether the expert employed "those kinds of facts or data on which experts in the field would reasonably rely." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (internal quotation omitted); *see also* Fed. R. Evid. 703.

IHB says Dr. Philipson, though credentialed and experienced on the disease of diabetes and helpful to the jury,[3] lacks knowledge of the job requirements of a locomotive engineer. IHB argues that this was a specific inquiry the railroad had to make. Because Dr. Philipson did not base his opinions on a locomotive engineer's job duties, IHB argues that his opinions should be excluded. Mr. Otero counters that Dr. Philipson's testimony informs whether Mr. Otero could anticipate a flare-up in hypoglycemic or hyperglycemic episodes, not whether he could work while experiencing a flare-up—in short, a medical opinion, not a vocational one. Thus, Mr. Otero argues that he wouldn't present a safety issue if he could recognize the warning signs and use his FMLA leave instead of going to work.[4]

As Mr. Otero highlights, Dr. Philipson opines on whether hyperglycemic or hypoglycemic episodes happen suddenly or whether an individual can recognize an oncoming flareup with warning. He reviewed Mr. Otero's medical history to determine whether it indicated his ability to recognize an oncoming flareup. He opines that Mr. Otero could perform "any job." He reasons, "If his blood sugar is not low during the day that he's on the job, or that he can detect a low and treat it, then he can perform any job." Nothing from the record suggests these opinions lack a sufficient foundation in the facts of this case or in his experience.

IHB argues that Dr. Philipson failed to read Mr. Otero's FMLA certification form properly. It argues that Dr. Philipson should see the same safety concerns Dr. Conibear saw. It also objects to Dr.

---

[3] IHB acknowledges that Dr. Philipson's testimony on "the disease of diabetes, the symptoms suffered by diabetics, the treatments for diabetes, and the complications of the disease" "would likely be helpful to the trier of fact" [ECF 72 at 9].

[4] Mr. Otero also argues that "it is undisputed that Otero did meet such [locomotive engineer] qualifications" [ECF 80 at 6]. This issue is still disputed by IHB [ECF 82 at 3 ("If Mr. Otero's qualifications were undisputed, then he would not have been disqualified.")].

Philipson's statement that whether or not he took days off on FMLA has nothing whatever to do with whether he was safe or not on the days when he did show up. These are mere disagreements with Dr. Philipson's conclusions, and suitable closing arguments, but not a lack of facts or evidence that forecloses the jury's consideration of his opinions.

At bottom, Dr. Philipson does not need to be a railroad safety expert to testify about the effects of diabetes and what a doctor's note may reveal about an individual's diabetic state. He hasn't been called as a railroad safety expert. He does not need to be a railroad safety expert to testify how diabetes typically affects an individual or what Mr. Otero's medical information revealed about his likelihood of becoming incapacitated. Nor has he confined his opinion to a locomotive engineer's duties. He has clearly said his opinion applies to any job.

        2.     *Reliable Principles and Methods.*

Expert testimony must originate from reliable principles and methods. Fed. R. Evid. 702(c). *Daubert* helps "to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996); *accord Kumho Tire*, 526 U.S. at 152. Scientific or medical testimony may be validated if the theory or technique can be or has been tested, if it has been subjected to peer review and publication, if it has a known or potential error rate, and if it enjoys general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *Gopalratnam*, 877 F.3d at 779.

IHB argues that Dr. Philipson's testimony is not the product of reliable principles and methods, citing *Brown v. Burlington Northern Santa Fe Ry.*, 765 F.3d 765, 772 (7th Cir. 2014). In *Brown*, the proposed expert had not adequately accounted for alternative explanations as to medical causation. *Id.* at 773. He deviated from his own prescribed methodology. *Id.* He didn't know facts essential to causation. *Id.* He didn't know the job responsibilities of the plaintiff that were necessary to know because the injury could have been caused by his job duties. *Id.*

IHB draws comparisons to *Brown*. The company says Dr. Philipson lacks knowledge of railroad safety [ECF 73-34 at 100 ("the analysis that I did in this case was whether globally he was impaired to do any job and whether he was having significant hypoglycemia")]; that he has no opinion about Mr. Otero's qualifications as a locomotive engineer [ECF 73-34 at 29]; that he was unaware that Mr. Otero's FMLA usage was a concern to IHB [*id.* 32]; and that he proposes to opine on diabetes management, not workplace safety [*id.* 126].[5] IHB argues that these are untenable gaps in Dr. Philipson's testimony similar to the testimony excluded in *Brown*, though in almost each case they reflect Dr. Philipson staying within his lane.

This case is fundamentally different than *Brown*. Dr. Philipson is not a medical causation witness. He will give his opinion on whether IHB had information suggesting that Mr. Otero could be incapacitated at anytime, anywhere, including while at work. IHB argues that Dr. Philipson ignored the concerning language in Mr. Otero's FMLA certification, yet he quotes it directly in his report. IHB argues Dr. Philipson ignored Mr. Otero's FMLA usage history, yet he cites that in his report as well.

IHB claims Dr. Philipson did not rely on any studies to conclude that there was no possibility Mr. Otero could have a flare up while at work. IHB says Dr. Philipson did not set forth any principles or methods to reach his conclusion, arguing nor can one determine if his opinions are generally accepted in the scientific community. This argument ignores much of Dr. Philipson's report. Dr. Philipson includes in his report a detailed description from an American Diabetes Association report documenting what diabetes does to the body and the typical symptoms associated with its varying degrees of severity. He then analyzes the language of Mr. Otero's FMLA certification form to assess whether it said he had severe episodes of hypoglycemia or hyperglycemia, utilizing his credentials and experience in doing so. He concludes that there was a lack of information as to its severity.

---

[5] IHB also takes issue with several statements by Dr. Philipson that he doesn't know whether the ADA or FMLA was violated generally, but ultimately that does not render him unreliable. The FMLA questions will be for the jury.

12

The court sees no cogent challenge to his methodology. He correlated his supported description of diabetes and his analysis of Mr. Otero's records using his experience and credentials, and supported it with authority from the relevant scientific community.

      3.    *Helpfulness (Fit).*

Finally, IHB moves to exclude Dr. Philipson's testimony because he viewed more medical records than IHB had at the time it made the decision to disqualify Mr. Otero, arguing that his opinion must address the ADA direct threat defense. Mr. Otero does argue direct threat and counters that this is the point of Dr. Philipson's testimony—IHB would not have disqualified Mr. Otero if it viewed all the necessary medical records.

In concluding that Mr. Otero did not present a significant risk of substantial harm to the health or safety of himself or others, Dr. Philipson reports, "I have also reviewed Otero's overall control of his blood sugars, his use of the DexCom Continuous Glucose Monitor, his medical and work records, and 'the Endocrinologist Evaluation Checklist' completed by Dr. Muhrez" [ECF 73-33 at 6]. Mr. Otero began using his glucose monitor years after his disqualification [*see id.* at 4], and both sides agree that IHB didn't have the checklist until after disqualification. Throughout his report, Dr. Philipson relies on "A1C" test results that IHB did not have [*see id.* at 6] as well as testimony from Mr. Otero [*see id.* at 4] and medical records that Mr. Otero sent to Dr. Bakston [*see id.* at 5].

Mr. Otero doesn't deny that Dr. Philipson relies on this information. He also argues only why it fits the direct threat defense under the ADA. The direct threat defense no longer applies after the court's summary judgment ruling. Without argument as to why this proposed opinion testimony is still needed on just the FMLA claims, the court considers two elements of Mr. Otero's FMLA retaliation claim, but the fit analysis on these points seems to fall short as well.

One issue is whether under the indirect method Mr. Otero met his employer's legitimate expectations. *See McDaniel*, 940 F.3d at 368. But on this point, the "proper inquiry mandates looking at

13

[Mr. Otero's] job performance through the eyes of [his] supervisors at the time of [the adverse employment action]." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008); *see Arrigo v. Link*, 836 F.3d 787, 796 (7th Cir. 2016) (citing *Gates* in FMLA retaliation case). There seems no proper way to look through the employer's eyes than to consider only the evidence that went into its decision. Dr. Philipson's opinion considers a much larger swath of information, broadening the lens of what IHB considered. Consequently, the court cannot say that his opinion would aid the jury in deciding this issue of consequence—in other words, his opinion would not fit—and, given its low probative value, and the substantial risk of jury confusion, it would likewise be inadmissible. *See* Fed. R. Evid. 403, 702.

A second issue is whether IHB's safety concerns were pretext for FMLA retaliation. *See McDaniel*, 940 F.3d at 368. But this element also features a focused lens. Looking through the eyes of IHB at the time of the adverse employment action, the "pretext inquiry asks not whether [IHB] correctly believed [Mr. Otero] was performing poorly, but rather whether the employer honestly believed so." *Arrigo*, 836 F.3d at 796. A medical opinion based at least in part on evidence IHB didn't consider or see provides little help to determine IHB's honest evaluation of the evidence it had. *See* Fed. R. Evid. 702. This too would unfairly confuse the issues before the jury when this opinion otherwise offers little probative value. *See* Fed. R. Evid. 403.

Mr. Otero hasn't dissected Dr. Philipson's opinion into portions that rely only on the relevant evidence, arguing instead that Dr. Philipson's opinion does rest on the outside evidence. The court will not parse his opinion for Mr. Otero, and the court has not been provided argument as to why his opinion (or any subset of them) would aid the jury to decide the FMLA claims. This testimony is unhelpful and has little probative value due to its broad lens, presenting a risk of unfair prejudice. Fed. R. Evid. 403, 702. Notwithstanding the court's consideration of all factors in the flexible analysis that is *Daubert*, the court excludes Dr. Philipson because his opinions seemingly no longer bear on the case to be tried now, after the summary judgment ruling.

CONCLUSION

Accordingly, the court GRANTS IHB's motion to exclude Dr. Philipson's testimony [ECF 72]. The court GRANTS IN PART and DENIES IN PART Mr. Otero and Mr. Johnson's motion to exclude [ECF 77], excluding expert testimony from Dr. Conibear on the medical concerns stemming from Mr. Johnson's hypertension.

SO ORDERED.

March 30, 2023                                         *s/ Damon R. Leichty*
                                                       Judge, United States District Court